AO 442 (Rev. 11/11) Arrest Warrant

**Sealed**

Public and unofficial staff access to this instrument are prohibited by court order.

## UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States of America

v.

LEATRICE MALIKA DE BRUHL-DANIELS (45)
Mitchellville, MD

*Defendant*

Case No. H18-1521M

**FILED**

OCT - 1 2018

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

TRUE COPY I CERTIFY
ATTEST: September 28, 2018
DAVID J. BRADLEY, Clerk of Court

By: _Kathy Murphy_
Deputy Clerk

### ARREST WARRANT

To:     Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     LEATRICE MALIKA DE BRUHL-DANIELS
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1512(c)(2) (Attempting to obstruct, influence, or impede any official proceeding)

Date:     09/28/2018

_____
*Issuing officer's signature*

City and state:     Houston, Texas

Peter Bray, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* 9/28/18, and the person was arrested on *(date)* 9/28/18 at *(city and state)* Alexandria, UA. Date: 10/01/18     Arresting officer's signature     Michelle Kramer / Special Agent  *Printed name and title* |

AO 91 (Rev. 11/11) Criminal Complaint

**Sealed**

Public and unofficial staff access
to this instrument are
prohibited by court order.

## UNITED STATES DISTRICT COURT
### for the
Southern District of Texas

United States Bourts
Southern District of Texas
FILED

SEP 28 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| LEATRICE MALIKA DE BRUHL-DANIELS (45) | ) Case No. | H18-1521M |
| Mitchellville, MD | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   June 1, 2016 and Sept. 12, 2018,   in the county of          Harris          in the
      Southern      District of         Texas         , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1512(c)(2) | Attempting to obstruct, influence, or impede any official proceeding. |

TRUE COPY I CERTIFY
ATTEST: September 28, 2018
DAVID J. BRADLEY, Clerk of Court

By: _Kathy Murphy_
                          Deputy Clerk

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jennifer S. Whitehurst, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:         09/28/2018

_____
*Judge's signature*

City and state:                Houston, Texas                Peter Bray, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jennifer S. Whitehurst, being first duly sworn, hereby depose and state as follows:

### AGENT BACKGROUND

1.      I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed since December 2004. I am currently assigned to the Houston Field Office in Houston, Texas. I have received training in the preparation, presentation, and service of criminal complaints and arrest and search warrants, and have been involved in the investigation of numerous types of offenses against the United States.

### PURPOSE OF THE AFFIDAVIT

2.      I make this affidavit in support of an application for a complaint and arrest warrant for Leatrice Malika De Bruhl-Daniels ("De Bruhl"), 45, a resident of Mitchellville, Maryland. De Bruhl, a U.S. citizen and Special Agent with the Naval Criminal Investigative Service ("NCIS"), obstructed justice by providing sensitive information to a target of a federal criminal investigation being conducted out of Houston, Texas.

### CRIMINAL OFFENSE ALLEGED

3.      Between on or about June 1, 2016, and on or about September 12, 2018, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, LEATRICE MALIKA DE BRUHL-DANIELS did corruptly attempt to obstruct, influence, and impede an official proceeding in the Southern District of Texas, in violation of Title 18, United States Code, Section 1512(c)(2).

### EVIDENCE SUPPORTING CRIMINAL OFFENSE ALLEGED

4.      De Bruhl has been an NCIS Special Agent for approximately the last nine years, and before that time she was an investigative specialist with the Federal Bureau of Investigation

(FBI). NCIS assigned De Bruhl to Dubai, United Arab Emirates (U.A.E.) in 2015, where she was stationed at the United States Consulate. She remained at that post until she was reassigned to Hawaii in April 2018.

5.      As an NCIS Special Agent, De Bruhl's duties did include investigating a variety of federal criminal violations, including those related to terrorism. In Dubai, she became the Port Visit Support ("PVS") liaison to the port of Jebel Ali, Dubai, U.A.E. As the PVS, she handled all felony criminal investigations, counterterrorism, and counterintelligence matters dealing with transiting Navy vessels. She also trained active duty U.S. Navy sailors and marines and other Defense Department civilian personnel on operational security matters, including trainings on counterintelligence, counterterrorism and criminal threats. As an NCIS Special Agent, De Bruhl had a top secret-sensitive compartmented information (TS-SCI) security clearance. This clearance is now suspended, but she actively had it during her entire time in Dubai. During her time in NCIS and FBI, De Bruhl attended numerous trainings on how and why certain information is classified, how to handle, store, dispose, divulge and otherwise disseminate classified information. She also had signed a nondisclosure agreement (NDA) regarding any classified information she may learn of as part of her duties, and this NDA was in effect during her entire time in Dubai and remains in effect.

6.      While in Dubai in June 2016, a friend introduced De Bruhl to an individual named Nadal Diya, a Syrian national living in Dubai. Diya told her he was seeking assistance with procuring a visa to the United States, and wanting to find out why the U.S. State Department would not renew his tourist visa after his last trip to the United States in the summer of 2014. De Bruhl began immediately looking into the issue, and discovered that Homeland Security Investigations ("HSI") had an interest in Diya. She communicated with an HSI agent in Dubai, who in turn sent

an email on June 6, 2016, to an HSI agent in Houston, Texas inquiring about the matter. The Houston agent had an active investigation there into Diya regarding his possible involvement in the shipment of goods from the United States to Iran in violation of United States export laws.

7.      The Dubai agent copied De Bruhl on the email and explained to the Houston agent that De Bruhl "has some interest in your target, albeit from a different angle." The Houston agent and De Bruhl then exchanged emails about the matter, and the Houston agent told her Diya was one of the targets of his federal criminal investigation.

8.      In mid-February 2017, De Bruhl asked State Department staff at the Dubai Consulate why Diya was unable to get a visa to travel to the United States. A staffer told her via email that Diya "and his entire family flag red IACTs (Inter Agency Counter Terrorism) ...Furthermore, DHS has indicated adverse information on him relating to both INA 212 3(b) (terrorism-related) and 6C1 (misrepresentation)..."

9.      Later, on February 22, 2017, De Bruhl reached out to the Houston HSI agent for additional information on Diya. She asked over a classified email system if the Houston agent was "still working the case" involving Diya. She then explained that he provided her information about his business, but before her agency went any further, she wanted to know the Houston agent was still interested in Diya, and that she "can definitely share some information" with him, and that she hoped the Houston agent "can shed some light to assist me with further contact with him." The Houston agent replied, "[w]e are still interested in Diya; however, the AUSA has stalled in prosecution for now until the [the FBI] declassified items the AUSA deems are discoverable. . . ." This statement informed De Bruhl the criminal investigation into Diya involved classified information and that there was an impending federal prosecution of Diya.

10. The Houston agent ended the email by suggesting the parties get on a secure video telephone conference ("SVTC") to discuss the issues, which would also allow them to discuss classified information. De Bruhl responded by explaining a "SVTC would be great since I have so many questions." A SVTC took place on March 9, 2017. This SVTC was between the Houston agent and a special agent from the Department of Commerce, both in Houston, and De Bruhl in Dubai.

11. During the SVTC, De Bruhl explained that she was aware that there was an HSI and FBI investigation into Diya, but claimed ignorance as to any details about either investigations. Agents did not provide De Bruhl with any details about the HSI/Commerce investigation, and advised De Bruhl to, "Stay away from Diya because he is a target of an ongoing investigation."

12. After De Bruhl got to know Diya, and unbeknownst to any of the federal agents investigating Diya, she entered into a personal relationship with Diya that ultimately became a romantic one.

13. On or about March 29, 2017, Diya threw De Bruhl an extravagant birthday party at his Dubai residence, according to several witnesses. In attendance at the party were employees of NCIS and the State Department, active duty Navy personnel, and U.S. government contract personnel, as well as personal friends of De Bruhl who traveled to Dubai from the United States. Witnesses estimate the cost of the party, which was fully catered with a D.J., lighting, decorations, and a custom birthday cake, was "tens of thousands" of dollars.

14. A few weeks after that birthday party, in early May 2017, De Bruhl approached the FBI Assistant Legal Attaché (ALAT) in Dubai, to determine whether Diya would make a viable human intelligence source for the U.S. Government. She gave details about Diya, his business, and his source potential, but did not mention that she knew Diya was the subject of HSI and/or

FBI investigations. Later, after searching Diya's name, the ALAT discovered that there was an ongoing FBI counterterrorism investigation into Diya being run out of Houston.

15. The ALAT informed De Bruhl in late May 2017 of the counterterrorism investigation, and warned her to keep her distance from Diya. He also instructed her not to share any new information with Diya unless otherwise instructed by the FBI and Department of Homeland Security case agents. He also stated that he would set up a meeting with the FBI case agent from Houston.

16. On June 27, 2017, De Bruhl emailed herself an email entitled "Thoughts to ND," which appear to be proclamations of love for Diya. She wrote the following:

> "Got something to get off my chest. I'm sure I should say this in person but I see you and smell your cologne I will be hesitant to say it. My feelings are confusing me. I can't stop thinking about of [sic] you. I have not slept in days . . . I'm deeply attracted to you and I can't think about you like that. It's not right. I'm not quite sure how you really feel about me but it's bad for me. Why is this bad? You're not mine and I will never have you like I want. I'm also afraid of getting hurt. Don't worry I will still fight for your visa situation as much as I can I ultimately want the best for you and pray those investigators see you like I do. We can stay FRIENDS but I have to bring my wall back up so I won't get hurt. Thank you for being so kind to me."

She ended the email to herself discussing her upcoming vacation to Greece and how she dreamt that Target would meet her in Greece and they would have "the best time ever."

17. About two weeks later, on July 12, 2017, De Bruhl, from the FBI's secure area in the Dubai Consulate, took part in a secure call classified at the SECRET level with me in Houston, Texas. While on that call, I informed De Bruhl that the Assistant United States Attorney assigned to Diya's investigation requested documentation detailing the chain of events between De Bruhl and Diya. De Bruhl stated she would discuss the matter with her supervisor and subsequently would provide the requested information. Also, during this call, I informed De Bruhl that Diya was the target of an FBI counterterrorism investigation along with another subject.

18.     After this conversation, maybe the same night as the conversation, De Bruhl met Diya at his residence in Dubai and had sexual relations with him. She also told him that he was the target of an FBI investigation, and that if it's the FBI, it's either counterterrorism or counterintelligence. She also told him that if he traveled to the United States he would be arrested. Then from July 16-24, 2017, she went to Greece on vacation, paid for, in part, by Diya, who gave her $1,400.

19.     On July 24, 2017, De Bruhl saved notes of a conversation and/or text message she had with Diya into her iPod. It's not clear when this conversation took place, but it was after her call with me, and appears to be around the time she revealed to Diya that he was the target of an FBI counterterrorism investigation. The notes start with the premise that "[i]t's poss ur phones are being monitored." She then wrote that she sent "that text," a text she would later explain to agents was sent to Diya claiming they were simply friends, in case someone was monitoring her texts, or in case someone suspects she is "acting as some sort of dbl agent." After that opening, De Bruhl told Diya the following:

> "Due to the line of questioning they asked, u hv some issues ahead. I'm sure u haven't told me a lot which is fine. Ur prob trying to protect me or just hold out on details u only want me to tell me. Either way I'm going to protect me. U hv some associates that are well known to them which hv potentially placed u on the Feds radar. If u hv been honest with whatever u've told me than I recommend u get together any docs u can to clear ur name and ur busn in the states. Whatever they hv on u is more than just suspicion so it's serious. Recommend u get a lawyer when they call u for a meet at the EMB or Consulate. That should be the next step, a meeting but I'm not sure when. Be honest! They know stuff and if u lie u may never see American soil again! Unless they need to recap with addl questions from me, I think my part to push ur process is done. I gave them no more than what I could to emphasize your innocence. Again if u lied to me than its going to be revealed later. I don't want to think u hv lied to me since I put my neck out there for u. I believe u and I want to stay ur friend so whatever u got urself into than keep me out of it."

As part of this investigation into her, De Bruhl revealed the existence of this note after she was interviewed by NCIS agents in May 2018. She made the following statement when telling them

about the note: "I noticed a note I saved to my phone that I would have probably told Diya. This is NOT good. I didn't remember sending this or telling him this but this is pretty damn bad."

20.    On December 18, 2017, an AUSA from Houston, two Houston HSI agents, a Commerce agent and I were scheduled to interview De Bruhl at the Dubai Consulate about her interactions with Diya. And on the next day, December 19, 2017, we had scheduled an interview with Diya under the ruse that they were there to collect information to assist with his visa.

21.    During her interview, De Bruhl failed to disclose her sexual relationship with Diya, the fact that he had given her money and other things of value and had thrown her the previously-mentioned birthday party even though agents asked for all details regarding their interactions. She also failed to mention to investigators that she had told Diya that he was the target of several law enforcement investigations, including a counterterrorism investigation, and she failed to disclose that she warned him that he would be arrested if he came to the United States. She also failed to disclose that her son would be working for Diya in the coming days, which was something she had also been previously discussing with Diya for several weeks.

22.    Agents did not know De Bruhl had a personal and sexual relationship with Diya at the time of this interview. After De Bruhl left the Dubai Consulate that night, she met with Diya at his home and prepped him for his meeting the next day with the HSI and Commerce agents.

23.    In his interview on December 19, 2017, Diya denied utilizing anyone in the Consulate to gather information or help him with his visa application. He did not mention De Bruhl's name, or knowing De Bruhl during the interview. A couple of weeks later, De Bruhl's son began working for his company until he left that employment in March 2018 after receiving about $3,000 in pay.

24.     In late April 2018, the Navy moved De Bruhl from Dubai to Hawaii for her next assignment. This assignment was to be part of a personal security detail for a high-ranking Navy official in Pacific Command based in Hawaii. Shortly after she arrived, however, her assignment was canceled and the reason she was given was for issues with her security clearance. On May 1, 2018, De Bruhl contacted a senior NCIS official asking for more details as to why her assignment was being canceled and to inquire about her security clearance issues.

25.     During this conversation with this NCIS official De Bruhl initially denied any wrongdoing, but over the course of the conversation, she admitted that she had an intimate sexual encounter with Diya. She also admitted she had borrowed money from Diya for travel, which she claimed she had later repaid. De Bruhl further revealed that she had allowed her 23-year-old son to visit and work in the U.A.E. for Diya while she was there. And ultimately, De Bruhl admitted that she "had been in contact with the foreign individual via text message since arriving in Hawaii."

26.     Over a series of non-custodial interviews conducted by NCIS in Hawaii and then later in Virginia, De Bruhl made the following admissions in early May 2018:

   a.   De Bruhl stated Diya paid for her birthday party and several dinners;

   b.   De Bruhl admitted to having a relationship with Diya that involved at least one sexual encounter;

   c.   Diya gave De Bruhl the equivalent of $1,400.00 which she claimed she later paid back in alcohol;

   d.   De Bruhl's son worked for Diya for a two-month period and was paid approximately $3,000;

   e.   De Bruhl believes she did inform Diya that he was the subject of an FBI counterterrorism investigation, and the name of another target of that investigation;

   f.   De Bruhl told Diya that his phones were likely being monitored;

   g.   The night of the December 18, 2017 meeting with Houston law enforcement personnel, and the night before Diya met with HSI Houston and Commerce agents in Dubai, De Bruhl admitted to coaching Diya for his interview the next day;

h. De Bruhl informed Diya that if he came to the United States he could be arrested;

i. Upon her departure from Dubai to Hawaii, Diya gave her a gold Pandora bracelet and paid for her to get a massage prior to her departure from Dubai. De Bruhl stated she sent the bracelet back to Diya as well as the money for the massage after arriving in Hawaii; and

j. De Bruhl repeatedly stated that her intention was to help the investigative agencies build a case on Diya but it got personal and she made some mistakes.

## CONCLUSION

27.     Based on the foregoing, which I affirm is true and correct to the best of my knowledge and belief, I respectfully submit that probable cause exists to support that Leatrice Malika De Bruhl-Daniels has committed the offense of corruptly attempting to obstruct, influence, and impede an official proceeding, in violation of Title 18, United States Code, Section 1512(c)(2), as detailed above.

Jennifer S. Whitehurst
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 28th day of September 2018, and I find probable cause supporting the criminal offense alleged in this affidavit.

Peter Bray
United States Magistrate Judge
Southern District of Texas

TYPE OF HEARING: **Rule 40**

CASE NUMBER: **18mj469**

MAGISTRATE JUDGE: John F. Anderson

DATE: 10/01/2018

TIME: **2pm**

TAPE: FTR RECORDER

DEPUTY CLERK: Whitney Garnett

EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA

VS.

**Leatrice Malika De Bruhl-Daniels**

GOVT. ATTY **Andrew Dober**

DEFT'S ATTY **w/out counsel**

DUTY AFPD **Elizabeth Mullin**

INTERPRETER/LANGUAGE _____

DEFT INFORMED OF RIGHTS, CHARGES, AND PENALTIES ( X )

DEFT INFORMED OF THE VIOLATION(S) ( )

COURT TO APPOINT COUNSEL ( X )   FPD ( X ) CJA ( ) Conflict List ( )

**Deft does not contest identity.**
**Deft requests a DH**
**Matter set for DH, in this**
**District.**

BOND **Deft remanded.**

_____

_____

NEXT COURT APPEARANCE **10/3/18**   TIME **2pm**
**DH (JFA)**
_____

**PH to be held**
**in charging district.**          **8min.**



AO 470 (8/85) Order of Temporary Detention

# UNITED STATES DISTRICT COURT



### EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA

v.

**ORDER OF TEMPORARY DETENTION
PENDING HEARING PURSUANT TO
BAIL REFORM ACT**

Leatrice malika DeBruhl-Daniels

CASE NO. 1:18mj469

Upon motion of the United States Government, it is hereby ORDERED that

a detention hearing is set for _10 / 3 / 18_ at _2pm_ before

the <u>Honorable John F. Anderson, United States Magistrate Judge</u> in Courtroom <u>501</u>
<span style="font-size:smaller">Name of Judicial Officer</span>

located at <u>401 Courthouse Square, Alexandria, Virginia</u>. Pending this hearing, the
<span style="font-size:smaller">Location of Judicial Officer</span>

defendant shall be held in custody by the United States Marshal

( _____ ) and produced for the hearing.
<span style="font-size:smaller">Other Custodial Official</span>

Date: _10 | 1 | 18_

/s/
John F. Anderson
United States Magistrate Judge

<span style="font-size:smaller">*If not held immediately upon defendant's first appearance, the hearing may be continued for up to three days upon motion of the Government, or up to five days upon motion of the defendant. 18 U.S.C. § 3142(f)(2).

A hearing is required whenever the conditions set forth in 18 U.S.C § 3142(f) are present. Subsection (1) sets forth the grounds that may be asserted only by the attorney for the Government; subsection (2) states that a hearing is mandated upon the motion of the attorney for the Government or upon the judicial officer's own motion if there is a serious risk that the defendant (a) will flee or (b) will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror.</span>

AO 466A (Rev. 12/17) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 1:18-MJ-469 |
| Leatrice Malika De Bruhl-Daniels | ) | |
| | ) | Charging District's Case No. H18-1521M |
| _Defendant_ | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*  ___Southern District of Texas___

I have been informed of the charges and of my rights to:

(1) retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2) an identity hearing to determine whether I am the person named in the charges;

(3) production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4) a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5) a hearing on any motion by the government for detention;

(6) request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☒ an identity hearing and production of the warrant.

☐ a preliminary hearing.

☐ a detention hearing.

☒ an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district. I request that my
☒ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: ___10/3/18___

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Kevin Wilson
_____
*Printed name of defendant's attorney*

TYPE OF HEARING: DH
CASE NUMBER: 18mj469
MAGISTRATE JUDGE: John F. Anderson
DATE: 10/3/18
TIME: 4 pm
TAPE: FTR RECORDER
DEPUTY CLERK: Whitney Garnett

EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA

VS.

Leatrice Malika De Bruhl-Daniels

GOVT. ATTY ___Andrew Dober | Alexander Berrang___

DEFT'S ATTY ___Kevin Wilson___

DUTY AFPD _____

INTERPRETER/LANGUAGE_____

DEFT INFORMED OF RIGHTS, CHARGES, AND PENALTIES (   )
DEFT INFORMED OF THE VIOLATION(S) (   )
COURT TO APPOINT COUNSEL (   )          FPD (   ) CJA (   ) Conflict List (   )

___Deft waives identity and___
___preliminary hearing (waiver___
___executed)___
___in this District only. PH requested___
___in the charging district.___

BOND ___Govt is seeking detention. Deft___
___argues for release with___
___conditions — granted.___

NEXT COURT APPEARANCE_____TIME_____

Deft remanded to the custody of
the USMS until all conditions are
met.

213-251

AO 199A (Rev. 6/97) Order Setting Conditions of Release

Page 1 of _____ Pages

# UNITED STATES DISTRICT COURT

OCT − 3 2018

U.S. DISTRICT COURT

_____**Eastern**_____   **District of**   **Virginia**_____

United States of America

v.

Leatrice Malika
_____
**Defendant**   De Bruhl-Daniels

## ORDER SETTING CONDITIONS OF RELEASE

Case Number:  1:18mj 469

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant shall immediately advise the court, defense counsel and the U.S. Attorney in writing before any change in address and telephone number.

(3) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified) _____ United States District Court _____

Place

___401 Courthouse Sq., Alexandria, VA____ on _____

Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✓ ) (4) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( ) (5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of

_____ dollars ($_____)

in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL   SERVICES   U.S. ATTORNEY   U.S. MARSHAL

# ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(X) (6) The defendant is placed in the custody of: *Release to a suitable 3rd Party Custodian*

Person or organization

Address *(only if above is an organization)*

City and state _____ Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____
_____ _____
Custodian _____ Date

(X) (7) The defendant must:

(X) (a) report on a regular basis to the following agency: **Pretrial Services**

( ) (b) continue or actively seek employment.

( ) (c) continue or start an education program.

(X) (d) surrender any passport to: *PTS (before release)*

(X) (e) not obtain a passport or other international travel document.

(X) (f) abide by the following restrictions on personal association, residence, or travel: **Do not depart the Washington D.C. metropolitan area without prior approval of Pretrial Services or the Court.**

~~( ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including:~~ _____

(X) (h) ~~get medical or psychiatric treatment:~~ *Submit to a mental health eval : or treatment as deemed necessary by PTS.*

(X) (i) ~~return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes:~~ *notify any current employers of the instant offense*

( ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

( ) (k) not possess a firearm, destructive device, or other weapon.

( ) (l) not use alcohol ( ) at all ( ) excessively.

( ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( ) (n) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

( ) (o) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

( ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.
  ( ) (i) **Curfew.** You are restricted to your residence every day ( ) from _____ to _____, or ( ) as directed by the pretrial services office or supervising officer; or
  ( ) (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
  ( ) (iii) **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

(X) (q) submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.
  (X) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.

(X) (r) report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

(X) (s) *reside at current residence and not move w/out prior approval of PTS or the court.*

X (t) *travel restricted to the Washington, DC metropolitan area & the Southern District of Texas for*

*court purposes only & all other travel to be approved in advance by PTS or the court.*

AO 199C (Rev. 09/08) Advice of Penalties                                    Page_____ of _____Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

_____
*City and State*                                    *Telephone Number*

### Directions to the United States Marshal

( ☐ )  The defendant is ORDERED released after processing.

( ☒ )  The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: *October 3, 2018*                              /s/
_____
John F. Anderson
United States Magistrate Judge

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

AO 199A (Rev. 6/97) Order Setting Conditions of Release | Page 1 of _____ Pages

# UNITED STATES DISTRICT COURT

_____ **Eastern** _____ District of _____ **Virginia** _____

United States of America

v.

Leatrice Malika
_____
Defendant  De Bruhl-Daniels

### ORDER SETTING CONDITIONS
### OF RELEASE

Case Number: 1:18mj 469

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1)  The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)  The defendant shall immediately advise the court, defense counsel and the U.S. Attorney in writing before any change in address and telephone number.

(3)  The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified) _____ United States District Court _____

Place

___ 401 Courthouse Sq., Alexandria, VA ___ on _____

Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✓ ) (4)  The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( ) (5)  The defendant executes an unsecured bond binding the defendant to pay the United States the sum of
_____ dollars ($_____)
in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

DISTRIBUTION:  COURT    DEFENDANT    PRETRIAL    SERVICES    U.S. ATTORNEY    U.S. MARSHAL

Case 4:18-mj-04691 JFA Document 1 Filed 10/04/18 Page 2 of 3 Page ID#: 21
Case 4:18-mj-04691 JFA Document 1 Filed 10/04/18 Page 2 of 3

AO 199B (Rev 12/11) Additional Conditions of Release                                                    Page 2 of 3 Pages

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(X) (6) The defendant is placed in the custody of: *Release to a suitable 3rd Party Custodian*

Person or organization *Ernestine DeBruhl*

Address *(only if above is an organization)*

City and state *Charlottesville Va. 2290 1-*        Tel. No. *435-390-6999*

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: *Ernestine DeBruhl*      *10/4/18*
                       *Custodian*                  *Date*

(X) (7) The defendant must:

(X) (a) report on a regular basis to the following agency:      **Pretrial Services**

( ) (b) continue or actively seek employment.

( ) (c) continue or start an education program.

(X) (d) surrender any passport to: *PTS ( before release )*

(X) (e) not obtain a passport or other international travel document.

(X) (f) abide by the following restrictions on personal association, residence, or travel:    **Do not depart the Washington D.C. metropolitan area without prior approval of Pretrial Services or the Court.**

( ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: _____

(X) (h) get medical or psychiatric treatment: *Submit to a mental health eval & or treatment as deemed necessary by PTS.*

(X) (i) return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: *Notify any current employers of the instant defense*

( ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

( ) (k) not possess a firearm, destructive device, or other weapon.

( ) (l) not use alcohol ( ) at all ( ) excessively.

( ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( ) (n) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

( ) (o) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

( ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.
     ( ) (i) **Curfew.** You are restricted to your residence every day ( ) from _____ to _____ , or ( ) as directed by the pretrial services office or supervising officer; or
     ( ) (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
     ( ) (iii) **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

(X) (q) submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.
     (X) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.

(X) (r) report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

(X) (s) *reside at current residence and not move w/out prior approval of PTS or the court.*

X (t) *travel restricted to the Washington, DC metropolitan area & the Southern District of Texas for*

*court purposes only & all other travel to be approved in advance by PTS or the court.*

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

     Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

     While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

     It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

     If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

    (1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

    (2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

    (3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

    (4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

     A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

     I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

( ☐ ) The defendant is ORDERED released after processing.

( ☒ ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: _OCTOBER 3, 2018_         _____
                                           *Judicial Officer's Signature*

                                  _____
                                           *Printed name and title*

DISTRIBUTION:   COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

Case 4:18-mj-01521   Document 4   Filed in TXSD on 10/17/18   Page 22 of 23

CLOSED

**U.S. District Court**
**Eastern District of Virginia - (Alexandria)**
**CRIMINAL DOCKET FOR CASE #: 1:18-mj-00469-JFA-1**

Case title: USA v. De Bruhl-Daniels                     Date Filed: 10/01/2018
                                                        Date Terminated: 10/05/2018

Assigned to: Magistrate Judge John F. Anderson

**Defendant (1)**

**Leatrice Malika De Bruhl-Daniels**          represented by   **Kevin Eugene Wilson**
*TERMINATED: 10/05/2018*                                      Office of the Federal Public Defender (Alexandria)
                                                              1650 King St
                                                              Suite 500
                                                              Alexandria, VA 22314
                                                              703-600-0800
                                                              Fax: 703-600-0880
                                                              Email: kevin_e_wilson@fd.org
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: Public Defender*

**Pending Counts**                                    **Disposition**
None

**Highest Offense Level (Opening)**
None

**Terminated Counts**                                 **Disposition**
None

**Highest Offense Level (Terminated)**
None

**Complaints**                                        **Disposition**
None

**Plaintiff**

**USA**                                        represented by   **Andrew Jared Dober**
                                                              US Attorney's Office (Alexandria-NA)
                                                              2100 Jamieson Avenue
                                                              Alexandria, VA 22314
                                                              **NA**
                                                              703-299-3700
                                                              Email: andrew.dober@usdoj.gov
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/28/2018 | | Arrest of Leatrice Malika De Bruhl-Daniels in the Eastern District of Virginia - Alexandria Division. |

| | | (wgar, ) (Entered: 10/02/2018) |
|---|---|---|
| 10/01/2018 | 1 | Arrest Warrant Returned Executed on 09/28/2018 in case as to Leatrice Malika De Bruhl-Daniels. (wgar, ) (Entered: 10/01/2018) |
| 10/01/2018 | 2 | Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Initial Appearance in Rule 5 (c)(3) Proceedings as to Leatrice Malika De Bruhl-Daniels held on 10/1/2018. US appeared through: Andrew Dober. Deft appeared without counsel (AFPD - Elizabeth Mullin present). Deft informed of rights, charges, and penalties. Court to appoint counsel. Deft does not contest identity. Deft requests a DH. Matter set for DH in this District. PH to be held in the charging District. Detention Hearing set for 10/3/2018 at 02:00 PM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. Deft remanded. (Tape #FTR.)(wgar, ) (Entered: 10/01/2018) |
| 10/01/2018 | 3 | Temporary Detention Order as to Leatrice Malika De Bruhl-Daniels. Signed by Magistrate Judge John F. Anderson on 10/01/2018. (wgar, ) (Entered: 10/01/2018) |
| 10/01/2018 | | ORAL ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Leatrice Malika De Bruhl-Daniels: Kevin Eugene Wilson for Leatrice Malika De Bruhl-Daniels appointed. Entered by Magistrate Judge John F. Anderson on 10/01/2018. (wgar, ) (Entered: 10/01/2018) |
| 10/03/2018 | 4 | WAIVER of Rule 5 Hearings by Leatrice Malika De Bruhl-Daniels (wgar, ) (Entered: 10/03/2018) |
| 10/03/2018 | 5 | Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Detention Hearing as to Leatrice Malika De Bruhl-Daniels held on 10/3/2018. US appeared through: Andrew Dober and Alexander Berrang. Deft appeared with counsel: Kevin Wilson. Deft waives identity and preliminary hearing (waiver executed) in this district only. Preliminary hearing requested in the charging district. Gov't is seeking detention. Deft argues for release with conditions - GRANTED. Deft remanded to the custody of the USMS until all conditions are met. (Tape #FTR.)(wgar, ) (Entered: 10/03/2018) |
| 10/03/2018 | 6 | ORDER Setting Conditions of Release as to Leatrice Malika De Bruhl-Daniels (1) PR BOND. Signed by Magistrate Judge John F. Anderson on 10/03/2018. (wgar, ) (Entered: 10/03/2018) |
| 10/04/2018 | 7 | Docketed in error and removed. (kbar, ) Modified on 10/5/2018 (kbar, ). (Entered: 10/04/2018) |
| 10/04/2018 | 8 | PR Bond Bond Entered as to Leatrice Malika De Bruhl-Daniels. Defendant released. (kbar, ) (Entered: 10/05/2018) |
| 10/05/2018 | | Notice to Southern District of Texas of a Rule 40 transfer (by email) as to Leatrice Malika De Bruhl-Daniels. (wgar, ) (Entered: 10/05/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/17/2018 10:26:35 | | | |
| **PACER Login:** | txsus0288:2650724:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-mj-00469-JFA |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |